**O**

# United States District Court
# Central District of California

| | |
|---|---|
| LAURA K. DUNBAR,<br><br>     Plaintiff,<br><br>  v.<br><br>USAA CASUALTY INSURANCE COMPANY, A TEXAS CORPORATION, and DOES 1 through 10,<br><br>     Defendants. | Case № 2:20-CV-08176-ODW-PVC<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS [11] AND ORDERING PLAINTIFF TO SHOW CAUSE RE JUDGMENT FOR DEFENDANT** |

## I.    INTRODUCTION

On July 24, 2020, Plaintiff Laura K. Dunbar initiated this breach of contract action against Defendant USAA Casualty Insurance Company.  (Notice of Removal ("Notice") Ex. A ("Compl."), ECF. No. 1-1.)  Before the Court is Dunbar's Motion for Partial Judgment on the Pleadings.  (Mot. Partial J. on the Pleadings ("Motion" or "Mot."), ECF No. 11.)  The matter is fully briefed. (*See* Opp'n, ECF No. 12; Reply, ECF No. 14.)  For the reasons discussed below, the Court **DENIES** the Motion[1] and **ORDERS** Dunbar to **SHOW CAUSE** why Judgment should not be entered for USAA.

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II.     BACKGROUND

This matter arises from USAA's refusal to defend Dunbar in an underlying civil action.   USAA issued homeowners insurance policies to Dunbar for consecutive periods from 2013 to 2018, under which USAA agreed to defend certain lawsuits brought against her.   (Compl. ¶¶ 7–9.)   The 2017–18 policy at issue here (the "Policy") provides that "[i]f a claim is made or a suit is brought against an 'insured' for 'damages' because of . . . 'property damage' caused by an 'occurrence' to which this coverage applies, [USAA] will . . . [p]rovide a defense." (*Id.* ¶ 8 (quoting Compl. Ex. A ("Policy") 63–64[2]).)   Coverage is excluded for "property damage" "[c]aused intentionally by any 'insured'" over the age of thirteen, or "[w]hich is reasonably expected or intended by any 'insured.'"   (Policy 64, 68.)   This coverage "applies separately to each 'insured.'"   (Policy 70.)

In 2017, Dunbar's neighbors, the Casanaves, sued Dunbar and her adult son, Bennett Collings, for allegedly causing damage to the Casanaves property.   (Compl. ¶ 14.)   Dunbar sought a defense from USAA under the Policy.   (*Id.* ¶ 21.)   USAA denied coverage after concluding that the Casanave suit alleged "intentional acts and not accidents," and was therefore excluded from the Policy.   (*Id.* ¶ 21.)   Following a bench trial, the court in the Casanave suit found in favor of Dunbar and Collings, and the Casanaves appealed.[3]   (*Id.* ¶ 18.)   Dunbar again requested USAA provide coverage for her defense under the Policy.   (*Id.* ¶ 24.)   USAA again refused, "reiterating its position that the injury alleged in the Casanave complaint was not caused by an 'occurrence' as defined in the USAA Polic[y]."   (*Id.* ¶ 25.)

Based on the foregoing facts, Dunbar filed this action against USAA in state court asserting claims for breach of contract, breach of the covenant of good faith and fair dealing, and declaratory relief.   (*Id.* ¶¶ 27–47.)   USAA answered Dunbar's Complaint and asserted a general denial and nine affirmative defenses.   (*See generally*

---

[2] As the Policy is a compiled document with internally repeating pagination, the Court cites to the CM/ECF pagination at the top of each page of the document.

[3] The Casanave appeal remains pending.   (*Id.* ¶ 18.)

Answer, ECF No. 1-2.)  USAA then removed the case to this Court.  (*See generally* Notice.)  Dunbar now moves for partial judgment on the pleadings as to USAA's first and second affirmative defenses, which respectively assert that Dunbar fails to state a cause of action and the Policy provides no coverage.  (*See* Mot. 5.)[4]

## III.  LEGAL STANDARD

After the pleadings are closed, but early enough not to delay trial, any party may move for judgment on the pleadings.  Fed. R. Civ. P. 12(c).  "While Rule 12(c) . . . does not expressly provide for partial judgment on the pleadings, neither does it bar such a procedure."  *Mays v. Wal-Mart Stores*, 354 F. Supp. 3d 1136, 1141 (C.D. Cal. 2019).  In a motion for judgment on the pleadings, a court may consider information properly subject to judicial notice as well as documents attached to the complaint.  *Id.* (quoting *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999)).  Judgment on the pleadings is appropriate "when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law."  *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989).

When ruling on a motion for judgment on the pleadings, "[a]ll allegations of fact by the party opposing the motion are accepted as true, and are construed in the light most favorable to that party."  *Gen. Conf. Corp. v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989), *cert. denied*, 493 U.S.

---

[4] USAA requests that the Court take judicial notice of filings in the Casanave action and of public date of birth information for Collings.  (*See* Req. for Judicial Notice ("RJN"), ECF No. 13.)  Dunbar does not oppose USAA's request.  (*See generally* Reply.)  A court may take judicial notice of court filings and other undisputed matters of public record.  *See* Fed. R. Evid. 201(b); *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (noting that a court may take judicial notice of "undisputed matters of public record" and "documents on file in federal or state courts"); *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007) (noting judicial notice of proceedings in other courts is proper "if those proceedings have a direct relation to matters at issue.").  Accordingly, the Court takes judicial notice of the proffered documents, but not of reasonably disputed facts therein.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).

1079 (1990) (citing *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988)). Thus, "a plaintiff is not entitled to judgment on the pleadings when the answer raises issues of fact that, if proved, would defeat recovery." *Id.* "Similarly, if the defendant raises an affirmative defense in his answer it will usually bar judgment on the pleadings." *Id.* "However, where affirmative defenses raise only questions of law, such affirmative defenses do not preclude judgment on the pleadings." *RLI Ins. Co. v. City of Visalia*, 297 F. Supp. 3d 1038, 1056 (E.D. Cal. Mar. 19, 2018). If judgment on the pleadings is appropriate, a court has discretion to grant the non-moving party leave to amend, grant dismissal, or enter a judgment. *See Lonberg v. City of Riverside*, 300 F. Supp. 2d 942, 945 (C.D. Cal. 2004).

## IV.     DISCUSSION

Dunbar contends that USAA's first and second affirmative defenses fail as a matter of law "[b]ecause the Casanave Lawsuit triggered USAA's broad duty to defend," and no Policy exclusion applies. (*See* Mot. 5–7.) USAA asserts the Motion must be denied because these two affirmative defenses, if true, defeat recovery, and Dunbar cannot show they fail as a matter of law. (Opp'n 8.) As the first and second affirmative defenses raise only questions of law, the Court may properly decide the merits. *See RLI Ins. Co.*, 297 F. Supp. 3d at 1056.

### A.     Duty to Defend

The central issue to both affirmative defenses is whether the Casanave suit triggered USAA's duty to defend under the Policy. "An insurer must defend its insured against claims that create a *potential* for indemnity under the policy." *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643, 654 (2005). Determining whether a duty to defend exists requires comparison of the complaint's allegations to the terms of the policy. *See Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 295 (1993). All that must exist is a possibility of coverage and any doubts must be resolved in the insured's favor. *See id.*; *see also Albert v. Mid-Century Ins. Co.*, 236 Cal. App. 4th 1281, 1290 (2015) (citing *Vann v. Travelers Cos.*, 39 Cal. App.

4th 1610, 1614–15 (1995)) ("Any doubt as to whether the facts give rise to a duty to defend is resolved in favor of the insured."). However, "the insured may not speculate about unpled third party claims to manufacture coverage, and the insurer has no duty to defend where the potential for liability is tenuous and farfetched." *Albert*, 236 Cal. App. 4th at 1290 (internal quotation marks omitted). "The ultimate question is whether the facts alleged 'fairly apprise' the insurer that the suit is upon a covered claim." *Id.* "Once the defense duty attaches, the insurer is obligated to defend against all of the claims involved in the action, both covered and noncovered . . . ." *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993).

Dunbar contends USAA owes a duty to defend because the Casanave First Amended Complaint ("Casanave Complaint") raised a possibility of coverage as it includes allegations that (1) Dunbar "destroyed" the Casanaves' property, which "could be construed as accidental in nature," or alternatively, (2) Collings caused the damage, implying "derivative or vicarious" liability to Dunbar for Collings's acts. (*See* Mot. 14, 15 (citing Compl. Ex. B ("Casanave Compl.") ¶¶ 15, 20).) The Court considers each argument in turn.

### 1. Casanave Complaint's Allegations

The Policy provides coverage for negligent, not intentional, acts that result in property damage. (*See* Policy 63.) The Policy's Personal Liability section provides coverage where "a claim is made or a suit is brought against any 'insured' for 'damages' because of 'bodily injury' or 'property damage' caused by an 'occurrence.'" (*Id.*) The Policy defines an "occurrence" as "an accident." (*Id.* at 42.) Under California law, "accident," as used in liability insurance policies, is defined as "an unexpected, unforeseen, or undesigned happening or consequence from either a known or an unknown cause"; it "is more comprehensive than the term 'negligence' and thus includes negligence." *Liberty Surplus Ins. Corp. v. Ledesma & Meyer Constr. Co.*, 5 Cal. 5th 216, 221 (2018). However, "[a]n accident 'is never present when the insured performs a deliberate act unless some additional, unexpected,

independent, and unforeseen happening occurs that produces the damage"; where an insured intended the acts resulting in the injury, the event may not be deemed an "accident merely because the insured did not intend to cause injury." *Albert*, 236 Cal. App. 4th at 1291 (citations omitted).

The Court finds the Casanave allegations reflect intentional acts, rather than negligence. The alleged facts consist of "affixing boards to a fence," "[d]estroying" parts of the property, "[c]utting down a tree," blocking access, and "[o]ther conduct to be determined." (Casanave Compl. ¶¶ 15, 45.) Dunbar argues "destroyed" is "broad enough to encompass" nonintentional acts. (Mot. 14.) However, the Casanave Complaint specifically alleges Dunbar committed these acts intentionally, as each act "was willful, wanton, malicious and *performed with the intent to injure*." (Casanave Compl. ¶ 17 (emphasis added).) In light of this paragraph, the alleged acts simply cannot be read in a way that elicits a possibility of accident or negligence. *See Delgado v. Interinsurance Exch. of Auto. Club of S. Cal.*, 47 Cal. 4th 302, 311–12 (2009) ("[A]n injury-producing event is not an 'accident' within the policy's coverage language when all of the acts, the manner in which they were done, and the objective accomplished occurred as intended by the actor.").

Dunbar also points to the second cause of action, for "negligent damage to property," which alleges "substantial damage" "[d]ue to the negligence" of Dunbar and Collings. (Casanave Compl. ¶¶ 20–21.) While at first blush this may seem to indicate negligence—and therefore possibly an "occurrence" falling within the Policy—the Court must rely on the underlying factual allegations rather than third-party labels. *See Cunningham v. Universal Underwriters*, 98 Cal. App. 4th 1141, 1148 (2002) ("The scope of the duty [to defend] does not depend on the labels given to the causes of action . . . ; instead it rests on whether the *alleged facts* or *known extrinsic facts* reveal a possibility that the claim may be covered by the policy."). The factual allegation underlying the second cause of action is that Dunbar and Collings "fail[ed] to exercise due care . . . caus[ing] substantial damage . . . including, but not

limited to that *described in paragraph 15*." (Casanave Compl. ¶ 20 (emphasis added).) The alleged facts therefore derive from paragraph fifteen, which, as discussed above, can only be read as alleging intentional acts. (*See id.* ¶ 15); *see also Minkler v. Safeco Ins. Co. of Am.*, 49 Cal. 4th 315, 327 n.4 (2010) (noting no duty to defend where "a third party has artfully pled as mere negligence" that which is actually intentional misconduct by the insured). The Court may not speculate as to *unalleged* facts to create a finding of an accidental act. *See Gunderson v. Fire Ins. Exch.*, 37 Cal. App. 4th 1106, 1114 (1995) ("An insured may not trigger the duty to defend by speculating about extraneous 'facts' regarding potential liability or ways in which the third party claimant might amend its complaint at some future date."). Accordingly, Dunbar's first argument fails, as there was no possible coverage arising from allegations that Dunbar intentionally and directly caused property damage.

### 2. Possibility of Dunbar's Liability for Collings's Acts

Dunbar next contends that, even if the Casanave Complaint alleges only intentional acts, the possibility of coverage nonetheless exists because allegations of Collings's intentional acts "necessarily" imply "derivative or vicarious" liability to Dunbar. (Mot. 15–18.) She argues the Casanaves "plainly suggest" she had an "independent obligation" to stop Collings's actions and failed, which qualifies as an "occurrence" to trigger coverage. (*Id.*; Reply 8–11.) USAA argues that a claim such as Dunbar implies is expressly excluded from the Policy because Collings (an insured) allegedly intended the damage. (Opp'n 18.) USAA contends this exclusion applies collectively and precludes coverage to all insureds for the occurrence. (Opp'n 19–20.)

Under California law, in a policy with multiple insureds like the one here, exclusions from coverage referencing the acts of "an" or "any" insured generally apply collectively, so that if the conduct of one insured triggers an exclusion, coverage is excluded for all insureds regarding that occurrence. *Fire Ins. Exch. v. Altieri*, 235 Cal. App. 3d 1352, 1360–61 (1991). However, where a policy also includes a severability clause providing that coverage "applies separately to each insured," the

exclusion applies only to the insured who performed the excluded act. *Minkler*, 49 Cal. 4th at 319, 323, 332. Under such a policy, each insured's coverage is analyzed separately, "so that the intentional act of one insured [does] not . . . bar liability coverage of another insured['s]" independent tort. *Id.* at 319. But this separation does not extend to "merely *vicarious* or *derivative*" liability, where there are no "allegations that [the insured] committed an *independent tort* in failing to prevent acts." *Id.* at 325.

The Policy here excludes "property damage 'caused intentionally'" or "intended by any insured," and contains a severability clause, mirroring *Minkler*, that states coverage "applies separately to each 'insured.'" (Policy 64, 68, 70); *see Minkler*, 49 Cal. 4th at 318. Therefore, under *Minkler*, the intentional acts of Collings are excluded from coverage, along with any claim that Dunbar is vicariously or derivatively liable for them. *See Minkler*, 49 Cal. 4th at 325. And although the exclusion would not preclude coverage for a claim that Dunbar committed an *independent tort* in failing to intervene, *see id.*, this is ultimately much ado about nothing because the Casanave Complaint contains utterly no factual allegations to support one.

Simply put, no facts are alleged that could possibly be construed as supporting a claim that Dunbar failed to supervise Collings or intervene to prevent his intentional acts. Dunbar points solely to paragraph twenty, which alleges Dunbar and Collings caused "substantial damage . . . [as] described in paragraph" fifteen (alleging acts of intentional misconduct), and that "many of [these] acts were performed by Defendant Collings." (Casanave Compl. ¶ 20; Mot. 15.) She argues this single allegation demonstrates that the Casanave Complaint "seeks to hold [her] vicariously liable for acts committed by her son based on a theory of her own negligence in failing to prevent the property damage." (Mot. 18.) But "merely vicarious or derivative" liability is insufficient to trigger a duty to defend. *Minkler*, 49 Cal. 4th at 325. Facts supporting an *independent tort* must exist. *Id.* Here, there are simply no factual allegations that Dunbar had a duty or failed to take steps to prevent Collings's actions.

Indeed, as discussed above, Dunbar allegedly also committed these same acts "with the intent to injure." (Casanave Compl. ¶ 17.) Dunbar "may not speculate about unpled third party claims to manufacture coverage, and [USAA] has no duty to defend where the potential for liability is tenuous and farfetched." *Albert*, 236 Cal. App. 4th at 1290 (internal quotation marks omitted). Accordingly, Dunbar's second argument also fails and USAA had no duty to defend.

Based on the foregoing, Dunbar has failed to show she is entitled to partial judgment on the pleadings as to USAA's first and second affirmative defense because there was no potential for coverage. As such, the Motion is **DENIED**.

## B. The Effect of Finding No Duty to Defend as a Matter of Law

Although USAA itself did not move for summary judgment, the Court finds it appropriate to consider summary judgment *sua sponte* in its favor. *See 3550 Stevens Creek Assocs. v. Barclays Bank of Cal.*, 915 F.2d 1355, 1357 (9th Cir. 1990), *cert. denied*, 500 U.S. 917 (1991) ("A judgment on the pleadings is a decision on the merits.") Courts have the authority to

> grant summary judgment *sua sponte* to a nonmoving party if, drawing all inferences in favor of the moving party, there are no genuine issues of material fact, the moving party has 'be[en] given reasonable notice that the sufficiency of his or her claim will be in issue,' and the nonmoving party is entitled to summary judgment as a matter of law.

*Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 654–55 (9th Cir. 2016) (alteration in original) (quoting *Albino v. Baca*, 747 F.3d 1162, 1176 (9th Cir. 2014)).

After considering the Policy language and the underlying allegations of fact, the Court finds USAA had no duty to defend as a matter of law, because of a total absence of potential for coverage. *See supra* Part IV.A. In reaching that determination, the applicable legal standard required the Court to accept as true all allegations of fact by USAA and construe all facts in a light favorable to USAA. *See Seventh-Day Adventist*, 887 F.2d at 230. However, if USAA had moved for judgment on the pleadings, instead of Dunbar, thus reversing that standard, the Court would have

nevertheless reached the same result. Indeed, as noted above, USAA asserted no factual allegations in its Answer or affirmative defenses. The Court's conclusion that USAA had no duty to defend as a matter of law thus rests solely on a comparison of the Policy terms to the underlying Casanave allegations. *See supra* Part IV.A. And even accepting all of *Dunbar's* factual allegations as true and construing them in a light favoring *her*, the terms of the Policy and the underlying allegations remain unchanged and susceptible of only one interpretation, leading inexorably to the conclusion that USAA had no duty to defend.

The only remaining question is whether Dunbar has "be[en] given reasonable notice that the sufficiency of . . . her claim will be in issue.'" *Gonzales*, 840 F.3d at 655 (quoting *Albino*, 747 F.3d at 1176). The answer is clearly affirmative. Dunbar necessarily had knowledge that she was asking the Court to determine whether a duty to defend existed and that such a determination would be dispositive to her claims. (*See* Mot. 7, 21 (seeking partial judgment on the pleadings because "the *Casanave* Lawsuit triggered USAA's duty to defend"); *see also* Reply 5 ("The[] [Casanave] allegations are all that need be considered by this Court in confirming USAA's duty to defend . . . .").) It is axiomatic that an adverse determination—that a duty to defend did not exist—would defeat each of her causes of action.

First, USAA's refusal to defend where it had no duty to do so cannot support an action for breach of contract. *See Oasis W. Realty LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011) ("[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) *defendant's breach*, and (4) the resulting damages to the plaintiff." (emphasis added)). As to breach of the implied covenant of good faith and fair dealing, "if defendants were given the right to do what they did by the express provisions of the contract there can be no breach." *Carma Devs. (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 374 (1992). As there was no possibility of coverage, USAA had the express right to deny Dunbar's request for defense in the underlying suit;

therefore, there could be no breach of the implied covenant of good faith and fair dealing. Dunbar's remaining causes of action for declaratory relief are derivative and necessarily fail as well.

Based on the foregoing, and in light of the Court's ruling that USAA had no duty to defend Dunbar in the Casanave action as a matter of law, the Court finds it appropriate to consider summary judgment *sua sponte* in USAA's favor. Therefore, Dunbar is **ORDERED** to **SHOW CAUSE**, in writing only, why the Court should not enter judgment for USAA on each of Dunbar's causes of action.

## V. CONCLUSION

For the reasons discussed above, the Court **DENIES** Dunbar's Motion for Partial Judgment on the Pleadings. (ECF No. 11.) Dunbar is **ORDERED** to **SHOW CAUSE** by **May 28, 2021**, why the Court should not enter judgment for USAA. Failure to timely respond will be construed as non-opposition and concession to entry of judgment in favor of USAA.

**IT IS SO ORDERED.**

May 14, 2021

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**